IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY LEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 10 C 2956 |
| | ) |
| WAUKEGAN HOSPITAL CORP., etc., | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

Mary Lee ("Lee") has sued her former employer, Waukegan Illinois Hospital Company, LLC ("Waukegan"), charging it with violating the Family Medical Leave Act ("FMLA," 29 U.S.C. §§2601-2654).[1] Waukegan moved for summary judgment under Fed. R. Civ. P. ("Rule") 56. Except for Lee's violations described in n.4, the litigants have complied with this District Court's LR 56.1 (see n.3), including their submission of legal memoranda. For the reasons stated here, Waukegan's motion is denied.

**Summary Judgment Standard**

Every Rule 56 movant bears the burden of establishing[2] the absence of any genuine issue of material fact (Celotex Corp. v.

---

[1] Citations to FMLA provisions will take the form "Section --," referring to the Title 29 numbering rather than the statute's internal numbering.

[2] At the summary judgment stage, of course, Lee need not "establish" or "show" or "prove" anything, but must merely demonstrate that a genuine issue of material fact exists. This opinion employs those terms only because the cited cases use that terminology, but it imposes on Lee the lesser burden described earlier in this footnote.

Catrett, 477 U.S. 317, 322-23 (1986)).  For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)).  But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists (Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008)) and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (id.).

Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  What follows is a summary of the relevant facts,[3] viewed of course in the light most favorable to nonmovant Lee.

## Background

Waukegan hired Lee as a radiologic technologist in 2007 (W. St. ¶6).  Lee's job was to perform x-rays, bone density exams, electrocardiography (attaching electrodes to a patient's chest to record the electrical signals emanating from the heart) and

---

[3] LR 56.1 requires parties to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which facts are agreed upon.  This opinion cites to Waukegan's LR 56.1 statement as "W. St. ¶--," to Lee's LR 56.1 statement as "L. St. ¶--" and to the parties' responses as "W. Resp. ¶--" and "L. Resp. ¶--."  Where a party's response does not provide a different version of the facts than the original statement, this opinion cites only that original statement.

phlebotomy (drawing blood from patients for lab work) (id. ¶7). Lee's direct supervisor was Gina Barrett ("Barrett") (id. ¶9), who in turn reported to Judy Sandler ("Sandler") (id.).

Sometime in 2008 Lee was diagnosed with peripheral neuropathy (W. St. ¶12). Lee discussed her condition with Barrett, who told Lee that her own mother had the same condition and was confined to a wheelchair (id. ¶¶14, 16-17). In March 2009 Lee's physician recommended that she undergo an outpatient surgical procedure to treat a neuroma (a growth of nerve tissue) associated with her peripheral neuropathy (id. ¶13). Lee met with a Waukegan human resources representative, who gave her an application for FMLA leave (id. ¶21). Lee submitted the paperwork to Barrett, and Barrett approved the request on March 10, 2009 (id. ¶23). Notwithstanding that approval, Barrett was upset that Lee requested FMLA leave without first consulting her and was upset that Lee did not provide her with what she considered adequate notice of the request (id. ¶26).[4]

---

[4] Barrett denies that. As W. St. ¶27 states:

> Judy Sandler and Gina Barrett deny that they reacted angrily to Mary Lee's request for FMLA leave, or that they raised any issues with respect to the notice provided.

Although LR 56.1(b)(3) requires Lee to respond to that statement, she offers only a boilerplate objection and repeats that practice several times later in her Response. That both violates LR 56.1 and frustrates the helpful function that the statements and responses serve: to alert the court to the facts that are actually in dispute. Such "objections" amount to nonresponses,

3

In late February or early March 2009 Waukegan's senior managers directed Barrett and Sandler to fire one full time employee (W. St. ¶34). Human resources manager Scott Dimmick ("Dimmick") provided Barrett with a standard form to grade the radiologic technologists (id. ¶¶36-37). Barrett filled out the form, assigning a numerical score to various measures of each employee's performance, such as experience, customer service, problem solving and attendance (id. ¶43). Barrett gave Lee a score of 85, a full 150 points lower than the next lowest score (id. ¶62). Dimmick reviewed the scores, confirmed with Barrett and Sandler that the scores were accurate, informed senior management that Lee had received the lowest score and recommended to senior management that Waukegan fire Lee (id. ¶65-66). Senior management approved her firing (id. ¶66).

On March 20, 2009 Dimmick, Sandler and Barrett met with Lee and told her that she was fired (L. St. ¶21). At the meeting Lee asked Dimmick if she was being fired because she had taken FMLA leave (W. St. ¶70). Dimmick replied that he had not been aware that Lee took FMLA leave (id.). Lee says that she expressed concern that she was fired because she had taken FMLA leave, to

---

and the corresponding facts are deemed admitted per LR 56.1(b)(3)(C). Furthermore, the Lee Response violates the LR 56.1(b)(3)(A) requirement that each paragraph of the nonmoving party's response provide "a concise summary of the paragraph to which it is directed." That requires nonmovants to create a stand-alone document showing all of the movant's facts and the nonmovant's responses.

4

which Dimmick responded: "I will tell you that we need reliable and healthy employees" (L. St. ¶22).[5]

### FMLA

Lee claims that Waukegan retaliated against her for exercising rights protected by FMLA. Although Lee styles that under the rubric of "retaliation," her charge is actually one of interference with her right to take FMLA leave. Section 2615(a)(2) prohibits retaliation for "opposing any practice made unlawful by this subchapter," and Section 2615(b) prohibits retaliation for filing a charge of FMLA discrimination, providing information regarding a charge of FMLA discrimination or testifying in a proceeding regarding FMLA discrimination. Lee did none of those things. Section 2615(a)(1), however, prohibits interference with the exercise of FMLA rights, which includes firing the employee because she took FMLA leave (29 C.F.R. §825.220(c)).

To survive the current summary judgment motion under the "direct method" identified a bit later, Lee must establish that there is a genuine issue of material fact that Waukegan "intended to punish her for requesting or taking FMLA leave" (Smith v. Hope Sch., 560 F.3d 694, 702 (7th Cir. 2009)). In that regard the parties' memoranda did not address whether Waukegan's intent must be the "but for cause" or merely a "motivating factor" for

---

[5] Dimmick denies saying that (W. St. ¶73).

firing Lee. Lewis v. School Dist. #70, 523 F.3d 730, 741-42 (7th Cir. 2008) says that a plaintiff need prove only that the FMLA claim was a "motivating factor" in the employer's decision to fire her, relying on Title VII cases that impose the same standard. But by contrast, Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343, 2348-49 (2009) holds that the Age Discrimination in Employment Act ("ADEA") requires a plaintiff to prove that age was the "but for" cause of the employer's adverse action and cautions against importing Title VII standards into the analysis of other statutes. Gross, id. at 2350 relied on the text of the ADEA, which prohibits discrimination "because of" age. Section 2615(a)(1) and the related regulations use neither the "motivating factor" nor the "because of" language, so it is not clear whether or how Gross may affect the standard in FMLA cases. Regardless, Lewis has not been questioned by any post-Gross Seventh Circuit case, and this opinion will treat the "motivating factor" standard as still applicable.

As Smith, 560 F.3d at 702 teaches, Lee may prove her FMLA claim using either the direct approach, in which a plaintiff adduces direct or circumstantial evidence of the employer's discriminatory intent, or the indirect approach, which employs the sequential burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Lee calls upon both methods, but because she survives Waukegan's summary judgment

6

motion using the direct method, this opinion need not also analyze her claim under the indirect method.

Lee has three pieces of circumstantial evidence of Waukegan's asserted discriminatory animus: Barrett's angry reaction to Lee taking FMLA leave; Dimmick's statement about needing healthy employees and the timing of the firing. Numerous Seventh Circuit cases hold that such a combination of potentially discriminatory statements and suspicious timing suffice to overcome a summary judgment motion (see, e.g., Sylvester v. SOS Children's Vills. Ill., Inc., 453 F.3d 900, 905 (7th Cir. 2006)). Although Waukegan disputes Lee's version of the first two elements in her trilogy, at this stage this Court must draw all reasonable inferences in Lee's favor (Lesch, 282 F.3d at 471). What was actually said is a disputed question of fact that the jury can decide after hearing evidence at trial.

Lee also seeks to rely on a fourth item: Barrett's comments that peripheral neuropathy had confined her mother to a wheelchair (L. Mem. 7). Lee says those comments show Barrett was against people with peripheral neuropathy. But Lee's lawsuit is grounded solely in FMLA, and FMLA prohibits interference with an employee's right to medical leave (see Sections 2612 and 2615), not disability discrimination. And as Lee now characterizes the comments, they are not probative of an FMLA violation. For the present it is unnecessary to resolve the admissibility of

Barrett's comments on that or any other basis. Even with Barrett's statements about peripheral neuropathy excluded, Lee has enough evidence to survive the summary judgment motion.

Waukegan raises several defenses, none of which is persuasive. First it asserts that Lee would have been fired regardless of any retaliation for FMLA leave (W. Mem. 8). In that respect, Waukegan used standardized evaluation forms to select the employee to be fired, and Lee scored the lowest on the forms (W. St. ¶¶33-34, 37). But Lee's scores on the evaluation were determined by her supervisor Barrett, and Lee says that Barrett's evaluation was biased (L. Mem. 7, 12).

<u>Staub v. Proctor Hosp.</u>,131 S. Ct. 1186, 1193 (2011) holds that "the requirement that the biased supervisor's action be a causal factor of the ultimate employment action incorporates the traditional tort-law concept of proximate cause." On that score <u>Staub</u> used the common law of torts to decide the issue posed at the outset of the opinion (<u>id</u>. at 1189):

> We consider the circumstances under which an employer may be held liable for employment discrimination based on the discriminatory animus of an employee who influenced, but did not make, the ultimate employment decision.

Even though <u>Staub</u>'s holding is not directly applicable here because it was not an FMLA case, its logic still is. Indeed, the <u>Staub</u> opinion clearly signaled that it was painting on a larger canvas--as it said (<u>id</u>. at 1191):

8

> In approaching this question, we start from the premise that when Congress creates a federal tort it adopts the background of general tort law.

In holding as it did, Staub expressly rejected the more constricted approach of Seventh Circuit cases (such as Staub itself) that employed a "cat's paw" predicate for liability--cases that required that a supervisor "exercised such 'singular influence' over the decisionmaker that the decision to terminate was the product of 'blind reliance'" (id. at 1190).[6] By contract, Staub, 131 S.Ct. at 1193 further elaborates:

But the supervisor's biased report may remain a causal factor if [an] independent investigation takes it into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified.

That's almost exactly what Lee says took place here: Barrett alone filled out the forms, gave Lee lower scores to punish her for taking FMLA leave and passed the forms up to reach Dimmick (W. St. ¶¶39-66; L. St. ¶¶25-34). And it will be remembered that Dimmick did not engage in any investigation, but simply sent Barrett's adverse evaluation further up the chain of command at Waukegan. If Lee can convince a jury that Barrett's evaluation was biased, she will have proved that Barrett's biased

---

[6] Those "singular influence" and "blind reliance" concepts were not uniformly used by the Seventh Circuit--some of its cases articulated a less demanding standard. Long v. Teachers' Retirement Sys. of Ill., 585 F.3d 344, 351-52 (7th Cir. 2009) provides a thorough discussion of the subject.

9

action was a proximate cause for Lee's firing. Waukegan is entitled to contest Lee's version of the facts, but it is the jury that must resolve the factual dispute after a trial.

Waukegan's second counterargument is that Dimmick's statement about needing "healthy and reliable" employees is irrelevant, because Dimmick exercised no discretion in the decision to fire Lee (W. Mem. 5-6). Waukegan relies on a line of cases that say that comments by "non-decisionmakers"--people not involved in the decision to fire the employee--are not evidence of discrimination (see, e.g., Cerutti v. BASF Corp, 349 F.3d 1055, 1062-63 (7th Cir. 2003)). But Waukegan overreads the statements in those cases. As Hunt v. City of Markham, 219 F.3d 649, 652-53 (7th Cir. 2000)(citations omitted and emphasis in original) has clarified:

> All that these cases hold--all that they could hold and still make any sense--is that the fact that someone who is not involved in the employment decision of which the plaintiff complains expressed discriminatory feelings is not evidence that the decision had a discriminatory motivation. That is simple common sense. It is different when the decision makers themselves, or those who provide input into the decision, express such feelings (1) around the time of, and (2) in reference to, the adverse employment action complained of. For then it may be possible to infer that the decision makers were influenced by those feelings in making their decision.

Dimmick's statement meets those criteria. Dimmick allegedly told Lee that Waukegan needed "reliable and healthy employees" at the meeting in which she was fired and in response to Lee's

10

mentioning her recent return from FMLA leave (L. St. ¶22). Both the timing of the comment and the setting in which it was made suggest that Dimmick--whose job it was to oversee the firing process (W. St. ¶36)--either intended to retaliate against Lee for taking FMLA leave or acquiesced in Barrett's plan to do so. Dimmick's statement, if made, buttresses a potential finding that the decision to fire Lee had a discriminatory motivation.

Finally, Waukegan says that Barrett's statements regarding FMLA leave are not evidence of a discriminatory motive, because Barrett approved Lee's FMLA leave request. That's flat wrong. Barrett's comments, if made as Lee says, are evidence that she was angered that Lee took FMLA leave. Whether she acted on that anger by denying the leave request or firing Lee at some later time is irrelevant. Either action is a violation of FMLA.

## Conclusion

Because Lee has identified genuine issues of material fact, Waukegan is not entitled to summary judgment. Its Rule 56 motion is denied. This action is set for a status hearing at 8:45 a.m. December 9, 2011 to discuss the procedures leading to trial (or perhaps settlement).

                                              _____
                                              Milton I. Shadur
                                              Senior United States District Judge

Date: December 5, 2011