```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

```
MARY LEE,                         )
                                  )
          Plaintiff,              )
                                  )
     v.                           )    No. 10 C 2956
                                  )
WAUKEGAN HOSPITAL CORP., etc.,    )
                                  )
          Defendant.              )
```

MEMORANDUM OPINION AND ORDER

This Court's December 5, 2011 memorandum opinion and order ("Opinion") denied the Fed. R. Civ. P. ("Rule") 56 summary judgment motion that had been filed by Waukegan Illinois Hospital Company, LLC ("Waukegan") in this action brought by its ex-employee Mary Lee ("Lee"). Now Lee has followed with a Rule 11(b) motion for sanctions, contending that what Waukegan's Rule 56 motion should never have called upon her to jump through the procedural hoops prescribed by that Rule and this District Court's LR 56.1's implementation of those requirements. With the motion having been briefed by the litigants, it is ripe for decision.

To that end, however, it is important to look at what preceded the motion. This Court's invariable procedure whenever a case on its calendar, after a series of progress reports made during periodic status hearings, reaches the point of setting a close-of-discovery date, is to schedule another status hearing on that date to discuss the next steps toward resolution of the

case. And if defense counsel then announces an intention to file a motion for summary judgment (an announcement that too often resembles a Pavlovian response, as though there were a direct linear connection between the completion of discovery and a Rule 56 motion), this Court's further invariable practice is to turn to plaintiff's counsel to inquire about the existence of material factual differences that could potentially defeat summary judgment.

Typically that response leads to an inquiry of the prospective movant's counsel as to why one or more of the matters spoken of by opposing counsel will or will not stave off summary judgment. And the nature of that further inquiry requires counsel to adopt an essentially judicial-type objective approach in crediting the evidentiary version advanced on plaintiff's behalf.

This Court is of course well aware of the difficulty that defense counsel, whose accustomed role is that of an advocate, may have in taking a figurative step backward to evaluate the prospects of summary judgment objectively. In an effort to address that mindset, this Court frequently takes the occasion--whether during the earlier-mentioned status hearings, when the question is how best to implement Yogi Berra's advice ("When you come to a fork in the road, take it"), or in seminars or workshops dealing with the subject, or in its own speeches and

writing in the area--to point out that from a legitimate cost-benefit perspective[1] a defendant is better served by directly following the path to trial rather than initiating a digression via an ill-considered Rule 56 motion.

Just a few points in such an analysis bear mention before this opinion turns to its applicability in this case. It is hardly necessary to remind counsel of the time and effort needed to comply with the admittedly onerous demands imposed by LR 56.1--demands that cause the expenditure of considerable time and effort that could instead have been devoted to readying the evidentiary materials and witnesses needed for trial. Moreover, this Court never requires trial briefs in conjunction with the joint final pretrial order ("FPTO") that is the prelude to trial (after all, under our assignment system we District Judges live with each case on our calendars from the very beginning, so that the issues are well known to us by the time the FPTO is submitted by the litigants).[2] And that contrasts dramatically with the need for counsel who represent a Rule 56 movant to prepare and

---

[1] "Legitimate" is used advisedly here, for an effort to create delay through the pursuit of an unmerited and consequently unsuccessful summary judgment motion should play no part in the analysis (see, e.g., 28 U.S.C. §1927).

[2] Motions in limine identified in an FPTO are of course an exception to the no-briefing situation referred to in the text. But the scope of briefing involved in such motions is typically dwarfed by the movant's extensive briefing needs in connection with a Rule 56 motion.

3

submit two often lengthy briefs--one in support of the motion and the other by way of reply.

In addition, because the laboring oar in initial preparation of a proposed FPTO must be wielded by plaintiff's counsel in the first instance, the work of defense counsel in that aspect of preparation for trial is correspondingly reduced. Finally and importantly, if it were in fact to turn out that plaintiff's claim could not succeed on the evidence presented at trial plus reasonable favorable inferences, defense counsel can move for judgment as a matter of law at the conclusion of plaintiff's case in chief (see Rule 50(a)), for which purpose the standard under that Rule is identical to the Rule 56 standard.

All of this has set out in macrocosmic terms why the regrettably Pavlovian approach of almost automatically linking the close of discovery to the filing of a summary judgment motion should instead be given a hard second look before counsel launch on that course of action. That said, it is time to examine the considerations discussed here in the microcosm of this case.

At the August 2, 2011 status hearing, with Waukegan's counsel having announced an intention to seek summary judgment, this Court posed to counsel on both sides its inquiry as to the existence or nonexistence of summary-judgment-blocking issues of material fact. Lee's counsel responded by orally identifying three evidentiary matters that the Opinion later found to mandate

the rejection of Waukegan's Rule 56 motion. Waukegan's counsel replied orally with an effort to discount each of those matters--an effort that was later echoed in Waukegan's summary judgment briefs and has now been reiterated in Waukegan's current Response to Motion for Rule 11 Sanctions.

It is obvious from that last-mentioned filing that Waukegan's counsel still hasn't gotten it--that he continues to manifest the earlier-described inability to view Lee's evidentiary submissions as a reasonable jury might. One prong of that evidence, the asserted hostility of Lee's supervisor Gina Barrett ("Barrett"), reflected in her angry reaction to Lee's statement that she was going to request FMLA leave,[3] could reasonably lead a jury to infer that Barrett's scoring of Lee for purposes of making the termination decision in connection with Waukegan's planned RIF was materially affected (if not indeed fueled) by Barrett's anger. And it will be recalled that Lee was indeed terminated just four days after she had returned from the FMLA leave.

Another piece of evidence that links up with Barrett's asserted hostility and with the close temporal proximity between Lee's assertedly resented FMLA leave and her termination is the

---

[3] Barrett supposedly said to Lee, "How dare you file for FMLA without consulting with me first." Although Barrett denies saying that, it plainly represents a contested fact for resolution by the jury, and hence it had to be credited for Rule 56 purposes.

5

statement that Lee attributes to Waukegan's Vice President of Human Resources Scott Dimmick ("Dimmick") as having been made at the meeting during which he, Barrett and Barrett's superior Judy Sandler told Lee she had been fired.  When Lee then told Dimmick that she found it ironic that she was being let go just four days after taking her FMLA leave, Dimmick assertedly responded "I will tell you that we need reliable and healthy employees."

That too was a piece of evidence that Lee's counsel identified in response to this Court's inquiry during the August 2 status hearing.  Waukegan's counsel replied at that time, then contended later in briefing the summary judgment motion and now reasserts that the asserted statement (which is contested) came from a nondecisionmaker and was allegedly irrelevant because it was made after Lee's termination had been announced--but those arguments fail entirely to deal with the prospect that the jury might decide both that the statement was made (it would of course be admissible against Waukegan as nonhearsay under Fed. R. Evid. 801(d)(2)(D)) and that it too reflected a corporate anti-FMLA stance.

In sum it cannot be said that a reasonable jury would be unable to credit Lee's version and to find that Waukegan had violated Lee's FMLA-created rights--and that is the litmus test that Waukegan's counsel should have applied (but did not) before starting down the summary judgment road.  There was really no

6

justification for Waukegan's thus having sidetracked this action's orderly progress toward trial, with the consequent waste of resources identified earlier in this opinion.

This holding should not of course be misunderstood as any indication by this Court as to whether Lee should (or will in fact) prevail at trial. That will be for the jury to resolve, and its answer will not affect the injury already caused to Lee by Waukegan's Rule 56 motion.

## Conclusion

For the reasons stated in this opinion, Lee's current motion for sanctions is granted, with Waukegan ordered to pay Lee an amount equal to all of the reasonable attorney's fees and other expenses directly resulting from the violation (Rule 11(c)(5)). To minimize further enlargement of the amount so ordered that may be attributable to fees on fees, the parties are encouraged to confer to seek possible agreement on part or all of the constituent components (hours spent and hourly rates)--but to the extent they cannot do so, this District Court's LR 54.3 prescribes the procedure to be followed (albeit on a much more expedited basis).

_____
Milton I. Shadur
Senior United States District Judge

Date: March 19, 2012